DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-7200
 FAX: (415) 436-7234
 sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br> Plaintiff,<br><br> v.<br><br>ALEX GOMES BARRIENTOS,<br> a/k/a "Axel Gamez<br><br> Defendant. | **NO. 19-0381-11 CRB**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: December 16, 2020<br>Time: 1:30 p.m. |

## I. INTRODUCTION

 Alex Gomes Barrientos worked as one of over a dozen street-level drug dealers for a drug trafficking organization (DTO) run by Andy Reanos-Moreno. As part of his role in the organization, Barrientos ordered distribution quantities of drugs that Reanos-Moreno then delivered. Following one of those deliveries, agents stopped Barrientos and seized powder cocaine and cocaine base (crack).

1

UNITED STATES' SENTENCING MEMO.
NO. 19-0381-11 CRB

1    Unlike his co-defendants, Barrientos is no a stranger to this Court.  He pled guilty to illegal re-

2    entry in 2011 under the name Juan Carlos Villatoro Hernandez.  The Honorable Jeffrey S. White

3    sentenced Barrientos to 18 months in custody.  *See* No Cr 11-627 JSW.

4    In addition, Barrientos has been convicted of felony drug trafficking in Utah and Colorado, and

5    has provided half a dozen different aliases when arrested.  His arrests date from 2007 through 2019 in

6    three different states.

7    Though the drugs seized from Barrientos in this case reflect a small quantity, his involvement in

8    an organized drug trafficking network and his repeated criminal conduct despite serving a prior federal

9    sentence demonstrate that a Guidelines sentence is warranted.  In order to deter further criminal conduct

10   and to protect the community, the government recommends a low-end Guidelines sentence of 24

11   months, followed by three years of supervised release and a mandatory $100 special assessment.

12   **II.      PROCEDURAL POSTURE**

13   On August 15, 2019, a federal grand jury returned an Indictment charging Barrientos with one

14   count of conspiring to traffic drugs, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B).  In advance of

15   the December 16, 2020, change of plea hearing, the government will file a Superseding Information

16   alleging Barrientos's participation in a drug trafficking conspiracy, but without a drug weight allegation.

17   Pursuant to a plea agreement, the parties anticipate that the defendant will enter a guilty plea to the

18   Superseding Information.  The government understands that Barrientos will seek simultaneous

19   sentencing.  Under Federal Rule of Criminal Procedure 32(c)(1)(A)(ii), (ii), a court may waive the

20   preparation of a presentence report and proceed to sentencing if it "finds that the information in the

21   record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. §3553" and that

22   finding is set forth on the record.

23   **III.     SENTENCING GUIDELINES CALCULATIONS**

24   As set forth in the parties' written plea agreement, the parties agree to the following Sentencing

25   Guidelines calculation:

26   a.      Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(4):                                    18
         (At least 40 KG but less than 60 KG of Converted Drug Weight)

27

28   b.      Acceptance of Responsibility:                                                           - 3

2

UNITED STATES' SENTENCING MEMO.
NO. 19-0381-11 CRB

c.       Adjusted Offense Level:                                                                    15

The base offense level reflects drug seized from Barrientos on January 24, 2019.  Based on the government's calculations, Barrientos is a Criminal History Category III.  The Guidelines range for imprisonment associated with adjusted offense level 15 and Criminal History Category III is 24-30 months.

## IV.    GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public.  18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

As the Court knows based on prior sentencings, the charges here stem from a federal wiretap investigation described in detail in the Criminal Complaint filed on August 31, 2019.  (*See* Dkt. 1, Compl. (originally filed under 3:19-71162 TSH).)  As described in the Complaint, the investigation uncovered an organized drug network where Reanos-Moreno housed street-level dealers in houses and apartments in the East Bay.  (*See* Dkt. 1, Compl. ¶¶ 17-26.)  On a near daily basis, the street-level dealers placed orders for drugs with Reanos-Moreno who initially dropped them off himself, and later sent a runner to make the drop-off.  (*Id.*)  The street-level dealers then traveled to the Tenderloin to resell the drugs.  (*Id.*)

In January 2019, agents intercepted Barrientos proposing becoming business partners with

3

UNITED STATES' SENTENCING MEMO.
NO. 19-0381-11 CRB

1  Reanos-Moreno.  On January 20, 2019, Barrientos called Reanos-Moreno and said that he wanted "to be

2  associates and do badass business together."  (Declaration of Sailaja M. Paidipaty, Exhibit A, Line

3  Sheets, Call 298.)  Barrientos said he had "crystal" – i.e. methamphetamine - and he gave "it to some

4  dudes for 2,500."  (*Id.*)  He went on to say that he had a drug connection who got his drug supply from

5  China ("the guy could get that shit pure from China") and that he could get "pills and everything."  (*Id.*)

6  Barrientos said the drug supplier would show them "how to cut it," meaning how to mix the drugs with

7  other substances in order to increase its volume.  (*Id.*)  Finally, he bragged that the drugs were "so pure

8  [they] could kill an elephant […] it was strong."  (*Id.*)

9         Four days later, Barrientos ordered drugs from Reanos-Moreno.  Before delivering the drugs,

10  Reanos-Moreno called to clarify the order:

| | | |
|---|---|---|
| 11 | REANOS-MORENO | Hey, what was it that you wanted? |
| 12 | BARRIENTOS | Hey?  I wanted, uh… three of the nose one. |
| 13 | REANOS-MORENO | Three of the nose one. |
| 14 | BARRIENTOS | And five of the day one. |
| 15 | REANOS-MORENO | Five of day one, but you know the nose one is at the same price. |
| 16 | BARRIENTOS | What do you mean? |
| 17 | REANOS-MORENO | The nose one is at one-fifteen. |
| 18 | BARRIENTOS | How come? |
| 19 | REANOS-MORENO | Oh no, that one [U/I] I only lowered the day one. |
| 20 | BARRIENTOS | Nah, you're kidding me.  Okay, then.  Oh, well. |
| 21 | REANOS-MORENO | Okay, I'm here.  Come this way; I'm between eighty-two and |
| 22 | | eighty-three. |
| 23 | BARRIENTOS | Okay, then. |

24  (Dkt. 1, Compl. ¶ 85.)  As he admits in his plea agreement, during this call, Barrientos ordered powder

25  cocaine (which is often ingested through the nose, hence the code word) and crack cocaine ("five of the

26  day").  Agents were following Reanos-Moreno at the time.  About seven minutes after the phone call,

27  agents saw Barrientos meet with Reanos-Moreno.  Barrientos got into Reanos-Moreno's car, stayed

28

4

1    there for about ten minutes, and then got out, at which point Reanos-Moreno drove away.  (*Id.* ¶ 87.)

2    Agents approached Barrientos and found in his jacket pocket three plastic baggies containing powder

3    cocaine and five plastic baggies containing cocaine base.  (*Id.* ¶ 88.)  Later, laboratory testing

4    determined that the plastic baggies contained a net total of 10.3 grams of powder cocaine (approximately

5    equal to 3 one-eighth-ounce units) and 17.3 grams of cocaine base (crack) (approximately equal to 5

6    one-eighth-ounce units).  (*Id.*)

7            Barrientos's arrest in this case is neither his first time being arrested for drug dealing, nor is it his

8    first conviction in this district.  Since 2004, Barrientos has been arrested on narcotics charges at least

9    seven times in three different states (California: 2011, twice in 2019; Colorado: twice in 2004, 2008;

10   Utah: 2007).  This led to state convictions in Colorado and Utah under two of the six different aliases

11   that he has used over the years.  He was deported in March 2008 and April 2010.  Following his arrest in

12   San Francisco in 2011, a federal grand jury returned a one-count indictment charging Barrientos with

13   illegal re-entry, in violation of 8 U.S.C. § 1326.  *See* No Cr 11-0627 JSW.  Pursuant to a fast track

14   resolution, the defendant entered a guilty plea and was subsequently sentenced to 18 months in custody,

15   after which, in 2017, he was once more deported.  Despite a federal conviction, a year and a half in BOP

16   custody, two state felony convictions, and three deportations, Barrientos once more returned to the

17   United States and continued doing the one thing he has done consistently – sell drugs.  His sentence to

18   the current charges should be, at the very least, greater than his prior federal sentence.  Therefore, a low-

19   end Guidelines sentence of 24 months is required to hold Barrientos accountable, promote deterrence,

20   and protect the community.

21   **V.     CONCLUSION**

22           The government respectfully recommends that this Court impose a custodial sentence of 24

23   months, followed by three years of supervised release, and a $100 mandatory special assessment.

24   DATED:  December 9, 2020                                    Respectfully submitted,

25                                                              DAVID L. ANDERSON
                                                                United States Attorney
26

27                                                              _____/s_____
                                                                SAILAJA M. PAIDIPATY
28                                                              Assistant United States Attorney

5